**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN THUET AND MICHELLE BRUMFIELD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| CHICAGO PUBLIC SCHOOLS; JANICE | ) | |
| JACKSON, in her official capacity as Chief | ) | |
| Executive Officer and in her individual capacity; | ) | |
| LAURA LEMONE, in her official capacity as | ) | |
| Network Chief, District 14, and in her individual | ) | |
| capacity; MICHAEL PASSMAN, in his official | ) | |
| capacity as Chief Communications Officer for the | ) | |
| Chicago Public Schools and in his individual | ) | |
| capacity; and JANE AND JOHN DOE, employees | ) | |
| of the Chicago Public Schools, in their official and | ) | |
| individual capacities, | ) | Jury Demanded |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs JOHN THUET and MICHELLE BRUMFIELD, by and through their attorneys,

COTSIRILOS, TIGHE, STREICKER, POULOS, & CAMPBELL, LTD., and for their

Complaint against Defendants CHICAGO PUBLIC SCHOOLS, JANICE JACKSON, LAURA

LEMONE, MICHAEL PASSMAN, and JANE and JOHN DOE, state as follows.

## INTRODUCTION

1.      On January 31, 2020, Plaintiffs' successful tenure as the Interim Principal and

Assistant Principal of Lincoln Park High School abruptly ended when Defendants summoned

Plaintiffs to Chicago Public Schools ("CPS") headquarters and handed them letters of

termination.  The letters indicated that Plaintiffs were placed on CPS's "Do Not Hire List,"

which prevents individuals from obtaining any position whatsoever within CPS.  In connection

with Plaintiffs' termination, CPS publicly disseminated unfounded, false statements accusing

Plaintiffs of causing "life-altering harm" to students and "endanger[ing] victims," falsely conveying that Plaintiffs had participated in and acted to conceal serious acts of misconduct at Lincoln Park High School. These statements are false, and Defendants knew they were false when Defendants made them. Plaintiffs – veteran educators who together had over 30 years' experience working in CPS without a single disciplinary incident – were provided no notice of any specific allegations against them, no meaningful hearing, and no opportunity to defend themselves and their good names against these false, stigmatizing accusations.

2.      Plaintiffs seek a declaratory judgment that Defendants violated their constitutional rights, as well as interim and permanent injunctive relief to preserve their rights to pursue employment at CPS.

3.      Plaintiffs also seek actual damages for the reputational, economic, and other harm they have suffered as a result of Defendants' unconstitutional conduct.

## PARTIES

4.      Plaintiff John Thuet ("Thuet") is a resident of Chicago, Illinois.

5.      Plaintiff Michelle Brumfield ("Brumfield") is a resident of Chicago, Illinois.

6.      Defendant Chicago Public Schools ("CPS") is a public agency that administers the Chicago Public Schools. CPS maintains, through its Office of Employee Engagement, the CPS "Do Not Hire List." CPS is a person within the meaning of 42 U.S.C. § 1983. CPS maintains offices at 42 W. Madison Street, Chicago, Illinois.

7.      Defendant Janice Jackson ("Jackson") is the Chief Executive Officer ("CEO") of CPS. Defendant Jackson is being sued in her official capacity as a person who, acting under color of state law, deprived Plaintiffs of their constitutional rights, and in her individual capacity as a tortfeasor. Defendant Jackson maintains offices at 42 W. Madison Street, Chicago, Illinois.

8.  Defendant Laura LeMone ("LeMone") is the Network Chief of District 14, which encompasses Lincoln Park High School. Defendant LeMone is being sued both in her official capacity as a person who, acting under color of state law, deprived Plaintiffs of their constitutional rights, and in her individual capacity as a tortfeasor. Defendant LeMone maintains offices at 110 N. Paulina, Chicago, Illinois.

9.  Defendant Michael Passman ("Passman") is the Chief Communications Officer for CPS. Defendant Passman is being sued both in his official capacity as a person who, acting under color of state law, deprived Plaintiffs of their constitutional rights, and in his individual capacity as a tortfeasor. Defendant Passman maintains offices at 42 W. Madison Street, Chicago, Illinois.

10.  Defendants Jane and John Doe are as-yet-unknown employees of CPS who made defamatory statements regarding Plaintiffs and/or who participated in Plaintiffs' wrongful terminations without due process.

## JURISDICTION AND VENUE

11.  This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

12.  This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201, 2202.

13.  Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b). The Defendants maintain offices within the Northern District of Illinois and all relevant events occurred and will occur in the Northern District of Illinois.

3

## FACTS

### *Thuet and Brumfield's Employment History with CPS*

14.     Thuet worked for CPS for more than a decade.  He began his career with CPS as a teacher at William R. Harper High School.  At Harper, Thuet specialized in designing curricula for "turnaround" schools.  Following five years of teaching at Harper, Thuet was chosen to participate in CPS's New Leaders' Aspiring Principals Program at Lincoln Park High School for the 2014-2015 school year.  After completing the New Leaders' Program, Thuet served as Assistant Principal at Collins Academy High School from 2015 through June 2019.

15.     Brumfield worked at CPS since 1995, when she began her career as a Spanish and English teacher.  Brumfield worked as a language teacher at various CPS high schools, including Kenwood Academy, Jones College Prep, Austin College and Career Academy, and King College Prep.  From 2011 through 2015, Brumfield served as the Assistant Principal at Kozminski Community Academy.  From 2015 through 2018, Brumfield was the Assistant Principal at Percy L. Julian High School.  And from 2018 through August 2019, Brumfield was the Interim Principal at Simeon High School.

### *Thuet and Brumfield's Tenure at Lincoln Park High School*

16.     In August 2019, Lincoln Park High School's Local School Council ("LSC") voted unanimously to offer Thuet a one-year position as Interim Principal for the 2019-2020 school year.  The LSC chose Thuet to replace its outgoing Principal, who had been promoted to Network Chief of District 15.  The LSC considered Thuet a promising replacement because of Thuet's previous experience with Lincoln Park High School and positive endorsements from teachers and staff.

17.     Thuet began his employment as Lincoln Park's Interim Principal on August 12, 2019.  Thuet hired Brumfield, who had extensive experience working as an Assistant Principal, for the position of Assistant Principal at Lincoln Park High School.  Brumfield began her employment as Assistant Principal at Lincoln Park High School on August 27, 2019.

18.     Thuet and Brumfield were enthusiastically received by the Lincoln Park High School community.  In just five short months, they made great strides in building a sense of school community and culture.

### *Thuet and Brumfield's Termination*

19.     On January 31, 2020, Thuet and Brumfield received an email meeting invitation from Defendant Laura LeMone ("LeMone"), the Network Chief of District 14, which includes Lincoln Park High School.  The subject line of the meeting invitation read only, "OSP Meeting." The meeting invitation indicated that a meeting with Thuet and Brumfield had been scheduled for 3 p.m. on that same day, January 31, at CPS headquarters, 42 W. Madison Street, Chicago, Illinois.

20.     When Thuet and Brumfield arrived at CPS headquarters at 3 p.m. on January 31, each met separately with different groups of CPS Administrators.

21.     Thuet was escorted into a conference room.  Shortly thereafter, Defendant LeMone, a CPS administrator, and CPS's in-house lawyer entered the room.  Defendant LeMone told Thuet CPS was dismissing him and handed him a termination letter.

22.     Thuet's termination letter gave no explanation for Thuet's termination.  The letter stated as follows:

Dear Mr. Thuet:

As an interim principal of the Chicago Public Schools, you are an at-will employee working at the pleasure of the Chief Executive Officer. A decision has been made to terminate your employment effective immediately.

Your salary will be paid through February 1, 2020. Your health insurance coverage will continue through February 29, 2020. You will have 60 days from the date of loss of coverage to apply for retroactive continuation of coverage, for you and your covered dependents, under the Public Health Services Act (PHSA), also known as COBRA.

Pursuant to the attached letter, you are not eligible for re-employment with the Chicago Public Schools.

Sincerely,
Matthew Lyons
Chief Talent Officer
Chicago Public Schools

23.     Attached to Thuet's January 31, 2020 termination letter was a letter stating that

CPS had placed Thuet on its "Do Not Hire List," making him ineligible for employment with

CPS. The letter stated as follows:

Dear Mr. Thuet:

Please be advised that, pursuant to the applicable Chief Executive Officer's Guidelines regarding do not hire ("DNH") status, you are no longer eligible for hire in the Chicago Public Schools ("CPS"), and a DNH has been placed on your file. Based on your overall performance and misconduct record, the basis for the DNH includes but is not limited to the following sections in the Misconduct/Discipline Matrix: H-17, P-2, P-3, P-4, PC1, PC4. In addition, you may not volunteer, either directly with CPS or through a vendor, at any CPS school or event. Further, you may not work for a CPS vendor where the position involves interacting with CPS students.

You may petition the Chief Executive Officer to remove that designation. The request should be addressed to The Office of Employee Engagement, 42 W. Madison Street, 9th Floor, Chicago, Illinois 60602. Please note that while a petition may be made at any time after placement of the designation, only one petition every two years shall be considered. The Guidelines and procedures for removal of the DNH designation may be found here: cps.edu/oee.

Sincerely,
Mary Ernesti
Executive Director
Employee Engagement

6

24.     Brumfield was treated similarly to Thuet.  She was escorted into a room at CPS headquarters where Matthew Lyons, CPS's Chief Talent Officer, handed her a termination letter.

25.     Brumfield's termination letter stated:

Dear Ms. Brumfield:

As an assistant principal of the Chicago Public Schools appointed on or after August 27, 2017, you are an at-will employee subject to section 11(A)(g3) under the Principal and AP Employment Guidelines and working at the pleasure of the Chief Executive Officer. A decision has been made to terminate your employment with the Chicago Public Schools effective immediately.

Your salary will be paid through February 1, 2020.  Your health insurance coverage will continue through February 29, 2020.  You will have 60 days from the date of loss of coverage to apply for retroactive continuation of coverage, for you and your covered dependents, under the Public Health Services Act (PHSA), also known as COBRA.

Pursuant to the attached letter, you are not eligible for re-employment with the Chicago Public Schools.

Sincerely,
Matthew Lyons
Chief Talent Officer
Chicago Public Schools

26.     Attached to Brumfield's January 31, 2020 termination letter was a letter stating that CPS had placed Brumfield on its "Do Not Hire List," making her ineligible for employment with CPS.  The letter stated as follows:

Dear Ms. Brumfield:

Please be advised that, pursuant to the applicable Chief Executive Officer's Guidelines regarding do not hire ("DNH") status, you are no longer eligible for hire in the Chicago Public Schools ("CPS"), and a DNH has been placed on your file.  Based on your overall performance and misconduct record, the basis for the DNH includes but is not limited to the following sections in the Misconduct/Discipline Matrix:  P-2, P-3, P-4, PC1, PC4.  In addition, you may not volunteer, either directly with CPS or through a vendor, at any CPS school or event.  Further, you may not work for a CPS vendor where the position involves interacting with CPS students.

You may petition the Chief Executive Officer to remove that designation.  The request should be addressed to The Office of Employee Engagement, 42 W. Madison Street, 9th

Floor, Chicago, Illinois 60602. Please note that while a petition may be made at any time after placement of the designation, only one petition every two years shall be considered. The Guidelines and procedures for removal of the DNH designation may be found here: cps.edu/oee.

Sincerely,
Mary Ernesti
Executive Director
Employee Engagement

27. As indicated in Thuet and Brumfield's January 31, 2020 termination letters, Defendant Jackson was ultimately responsible for the decision to terminate Thuet and Brumfield and was ultimately responsible for the decision to put them on the Do Not Hire list.

28. Thuet and Brumfield's January 31, 2020 termination letters were issued without notice, without a hearing, and prior to any other opportunity to be heard. Indeed, Thuet and Brumfield were provided no notice or details of the alleged "performance and misconduct record" that purportedly justified their Do Not Hire designation by CPS.

29. Prior to January 31, 2020, Thuet and Brumfield were not given any indication that they would be terminated and placed on the Do Not Hire List. Thuet and Brumfield were not provided with any advance notice, nor were they given an opportunity to challenge the basis for their termination and Do Not Hire status prior to its issuance.

30. While the January 31, 2020 letters refer to a "petition … to remove [the DNH] designation," without notice of the precise allegations or any explanation of the evidence against them, Thuet and Brumfield cannot meaningfully prepare or participate in any post-deprivation petition or appeal process.

***Defendants' False, Defamatory, and Public Statements About Thuet and Brumfield in Connection with Their Termination and Do Not Hire Designation***

31. In connection with Thuet and Brumfield's abrupt termination without notice or explanation on January 31, 2020, Defendants made and issued a series of false, stigmatizing

8

public statements which accused Thuet and Brumfield of causing "life-altering harm" to students and "endanger[ing] victims."  Defendants' statements injured Plaintiffs' reputation in the educational and professional communities and in the Northern District of Illinois, generally.

32.     In statements to the media sourced to "CPS officials," Defendants accused Thuet and Brumfield of serious misconduct.  "CPS officials" were cited as the source for the following defamatory statements regarding Thuet and Brumfield in a February 13, 2020 article in the Chicago Sun-Times:

- "[S]chool administrators minimized sexual misconduct allegations, didn't protect whistleblowers or alleged victims from bullying and retaliation, withheld key evidence from investigators and lied to families about the status of investigations";

- Thuet and Brumfield made a series of "troubling decisions" in connection with an unapproved basketball team trip to Detroit, including that Brumfield "lied about not knowing [about the trip]"; Thuet "minimized the allegations and instructed the dean to organize a meeting between the accused students and the whistleblowers who first reported it"; Thuet "for six days didn't share [] evidence of the incident on the trip with the district's Office of Student Protections and Title IX"; and Thuet "told the parents of the impacted students that officials from that department reviewed the evidence and didn't find it to be serious";

- Thuet and Brumfield improperly handled an incident involving alleged inappropriate communication between the girls' basketball coach and a student, including that "Thuet told Brumfield … to look into the allegation on her own"; "Brumfield wasn't careful in reaching out to the student" and "tipp[ed] off the basketball coach that he was under investigation"; and Brumfield "allegedly suggested to the student that she may have caused or invited the advances by the staff member."

(Ex. 1, *EXCLUSIVE:  Why the Lincoln Park High School Administrators Were Fired*, Chicago Sun-Times, Feb. 13, 2020, *available at* https://chicago.suntimes.com/education/2020/2/13/21136664/lincoln-park-high-school-boys-basketball-john-thuet-michelle-brumfield).

33.     In addition to the anonymous comments from CPS officials, the same February

13, 2020 Sun-Times article quoted the following stigmatizing and false statements issued by a

Defendant Passman:

- "'Administrators at Lincoln Park High School failed to promote the best interests of their students and endangered victims who were counting on their support …. The personnel actions we have taken were necessary to ensure a school environment that prioritizes the safety of all students, and we are committed to supporting the Lincoln Park High School community through this challenging time.'"

- "'Too many adults in the school community are needlessly creating an environment that is perpetuating the life-altering harm done to multiple students, and they are impeding the community's ability to heal.'"

(Ex. 1).

34.     Each and every one of the stigmatizing accusations described in paragraphs 32-33

above is unfounded and false.

35.     Thuet and Brumfield never "endangered victims" or caused or "perpetuat[ed]"

"life-altering harm" to students.

36.     Thuet and Brumfield never "minimized" any reports they received of misconduct.

37.     In terminating Plaintiffs and placing them on the Do Not Hire list, Defendants

deprived Plaintiffs of their constitutional rights to due process and a name-clearing hearing.

Plaintiffs were deprived of their constitutional rights to notice of the allegations and a

meaningful opportunity to contest the false allegations that were purportedly the basis for

Defendants' adverse actions against them.  Indeed, to date, Defendants have not provided

Plaintiffs with notice of any specific allegations that supposedly support the false generalized

defamatory accusations that Defendants have disseminated to the public.

***Defendants' Statements and Actions Have Stigmatized Plaintiffs in the Community***

38.     Plaintiffs have been stigmatized by their January 31, 2020 terminations and Do Not Hire designations, as well as by Defendants' publicly and widely-disseminated statements, falsely accusing Plaintiffs of endangering students and causing life-altering harm.  As a result, Plaintiffs' professional reputations have been harmed, making them virtually unemployable in the education field.

39.     Defendants' unfounded, false statements regarding Plaintiffs threatens Plaintiffs' livelihood.  It will be extremely difficult, if not impossible, for Plaintiffs to find employment in the educational field when Defendants' defamatory statements are publicly available to any potential employer through a basic Google search.  Indeed, Defendants' defamatory statements render Plaintiffs virtually unemployable in any capacity, since few employers are interested in hiring individuals responsible for causing "life-altering harm" to students or "endanger[ing] victims."  Defendants' statements have all but destroyed Plaintiffs' employment prospects.

## FIRST CLAIM FOR RELIEF
## (42 U.S.C. § 1983; Deprivation of Procedural Due Process)

40.     The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

41.     Defendants deprived Plaintiffs of their constitutionally-protected liberty interests in their occupations without providing the procedural protections required by the Due Process Clause of the Fourteenth Amendment.  Defendants acted without providing notice or a hearing, and without providing Plaintiffs with any meaningful opportunity to deny, rebut, or contest the allegations against them, their termination, or their placement on the Do Not Hire List.

42.     Because Defendants made false, stigmatizing statements to the public in connection with terminating Plaintiffs and placing them on the Do Not Hire List, Plaintiffs were

entitled to a meaningful hearing that would allow them to clear their names in a public forum.
Defendants denied Plaintiffs their right to such a hearing.

43.    Plaintiffs have an important liberty interest in being free from false stigmatization
at the hands of the government.  Such harm arises in conjunction with Plaintiffs' present and
future inability to be employed as educators on the same terms as other members of the public.

44.    As described above, Defendants disseminated false public statements about
Plaintiffs that are sufficiently stigmatizing and derogatory to injure Plaintiffs' good names and
reputations in the community.

45.    Defendants' false accusations against Plaintiffs have rendered them virtually
unemployable in the educational field and beyond.  Plaintiffs cannot be employed in any position
in CPS as a result of being placed on the Do Not Hire List.  Further, Plaintiffs' placement on the
Do Not Hire List has been disclosed to any prospective employer through Defendants' public
statements.  And Defendants' allegations connecting Plaintiffs to serious allegations of "life-
altering harm" and "endanger[ing] victims" have made it highly difficult, if not impossible, for
them to be hired for another position in education for which they would otherwise qualify.

46.    Defendants made their false, stigmatizing statements in connection with
terminating Plaintiffs and placing them on the Do Not Hire List.  Defendants' combination of
publicly-disseminated stigmatizing statements about Plaintiffs in connection with Defendants'
high-profile, public termination of Plaintiffs gives rise to a claim under the Due Process Clause
of the Fourteenth Amendment.

***Violations of Procedural Due Process***

47.    Plaintiffs were deprived of their right to notice and a meaningful hearing to
contest the unfounded and false accusations that have injured their reputation and professional

prospects.

48.     Defendants terminated Plaintiffs and placed them on the Do Not Hire List without any of the protections afforded by due process of law.  These included, but are not limited to, the following:

- No exigent or emergency circumstances here merited Defendants' termination of Plaintiffs and placement on a Do Not Hire List without a pre-deprivation hearing.

- Before Plaintiffs were terminated and placed on the Do Not Hire List, Plaintiffs were not given meaningful notice of their conduct or behavior that allegedly prompted Defendants' actions.

- Before Plaintiffs were terminated and placed on the Do Not Hire List, Plaintiffs were not given any forum or opportunity, such as a hearing before a neutral party, to contest or challenge the allegations against them.

- Before Plaintiffs were terminated and placed on the Do Not Hire List, Plaintiffs were not provided any opportunity to confront any of the witnesses against them.

- Even after Plaintiffs were terminated and placed on the Do Not Hire List, Plaintiffs were not given any specific notice of, or details about the behavior that they were alleged to have engaged in that prompted Defendants' actions against them.

- Defendants failed to provide Plaintiffs with the basis for Defendants' adverse employment actions, thus foreclosing any opportunity for a meaningful appeal or petition to remove the Do Not Hire designation.

- Because of the numerous false stigmatizing statements Defendants made to the public at-large in connection with Plaintiffs' termination, due process required that Plaintiffs be provided a hearing in a public forum so as to be able to clear their names publicly.

49.     Defendants deprived Plaintiffs of their rights to liberty arbitrarily, so as to offend fundamental notions of fairness and due process, in violation of the Fourteenth Amendment.

50.     Reasonable officials in Defendants' positions would have known that their actions violated clearly established constitutional rights to procedural due process.

51.     Defendants' alteration of Plaintiffs' status under state law (by placing them on the Do Not Hire List), coupled with Defendants' repeated public false accusations that Plaintiffs

caused "life-altering harm" and "endangered victims," have stigmatized Plaintiffs in the eyes of the educational community and damaged their reputations in the teaching profession as a whole.

52.     WHEREFORE, Plaintiffs are entitled to a declaratory judgement that their terminations and placement on the Do Not Hire List violated their constitutional rights to due process; interim and permanent injunctive relief forbidding Defendants from enforcing the Do Not Hire List; an award of actual damages; and such other relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Defamation *Per Se*)

53.     The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

54.     On February 11, Defendants met with the Lincoln Park High School LSC in a so-called "closed-door meeting." Defendants conditioned provision of any information regarding Plaintiffs' termination on the LSC's agreement to keep the information confidential.

55.     Shortly after the meeting, however, Defendants breached their own confidentiality agreement by communicating with the Chicago Sun-Times, resulting in the February 13, 2020 article cited above and attached hereto as Exhibit 1.

56.     Referring to Thuet and Brumfield, Defendant Passman said, "[a]dministrators at Lincoln Park High School failed to promote the best interests of their students and endangered victims who were counting on their support." (Ex. 1). This statement is false.

57.     Defendants' publications of these false statements were not privileged.

58.     The accusations and stigmatizing statements made by Defendants and set forth herein were false. Defendants knew that these statements were false or were grossly negligent in not knowing it. Defendants acted with actual malice in making these statements.

14

59.     Defendants' false statements to the media, which impugned Plaintiffs' professional integrity and conduct and prejudiced Plaintiffs in their profession, are defamatory *per se*.

60.     As a result of Defendants' defamatory conduct, Plaintiffs suffered significant mental anguish, anxiety, personal humiliation and embarrassment, loss of professional and personal reputation, loss of career advancement, and loss of standing in their professional community.

61.     WHEREFORE, Plaintiffs are entitled to interim and permanent injunctive relief prohibiting Defendants from further disseminating defamatory statements about them; an award of actual damages; an award of punitive damages; and such other relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

62.     The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

63.     The acts and conduct of the Defendants as set forth above were extreme and outrageous.  Defendants intended to cause, or were in reckless disregard of the probability that their false, defamatory statements would cause, severe emotional distress to Plaintiffs, as more fully alleged above.

64.     Defendants' actions and conduct did directly and proximately cause severe emotional distress to Plaintiffs, and thereby constituted intentional infliction of emotional distress.

65.     Defendants' actions were undertaken with willfulness and reckless indifference to the rights of others.

15

66.     As a proximate result of Defendants' wrongful acts, Plaintiffs suffered damages, including severe emotional distress and anguish, as more fully alleged above.

67.     WHEREFORE, Plaintiffs are entitled to interim and permanent injunctive relief prohibiting Defendants from further disseminating defamatory statements about them; an award of actual damages; and such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Matt Ryan*
*Attorney for John Thuet and Michelle Brumfield*

Matthew S. Ryan
Emily C.R. Vermylen
Cotsirilos, Tighe, Streicker, Poulos & Campbell, Ltd.
33 North Dearborn Street
Suite 600
Chicago, IL 60602
(312) 263-0345

16