UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN THUET, | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 1369 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, JANICE JACKSON, in her official capacity as Chief Executive Officer and in her individual capacity, MICHAEL PASSMAN, in his official capacity as Chief Communications Officer and in his individual capacity, and LAURA LeMONE, in her official capacity as Network Chief, District 14, and in her individual capacity, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

For the reasons set forth below, Plaintiff's motion *in limine* to bar Defendants from calling A.K. as a witness [204] is granted.

**STATEMENT**

Trial is set for December 5, 2022, in this suit brought by John Thuet against the Chicago Board of Education and Board employees Dr. Janice Jackson, Michael Passman, and Laura LeMone. Doc. 174. The sole claim to be tried is Thuet's 42 U.S.C. § 1983 claim for violation of his occupational liberty interest caused by allegedly defamatory statements made by Defendants in connection with his termination as principal of Lincoln Park High School ("LPHS"). Docs. 166-167 (reported at 2022 WL 6122622 (N.D. Ill. Oct. 7, 2022)); Docs. 229-230 (reported at 2022 WL 16961443 (N.D. Ill. Nov. 16, 2022)). Thuet moves *in limine* to bar Defendants from calling A.K. as a witness at trial or, alternatively, to compel A.K.'s deposition. Doc. 204.

A.K. was a student manager for the LPHS boys' basketball team. During a December 2019 trip to a tournament in Detroit, A.K. had a consensual sexual encounter with a team member. The incident was filmed without A.K.'s knowledge or consent, and the video thereafter circulated among members of the team. The parties have stipulated to these facts. Doc. 203-1 at ¶¶ 7-15. Defendants submit that the stipulation does not reach certain issues that they will seek to prove at trial, thereby requiring them to call A.K. as a witness. Specifically, Defendants intend to solicit testimony that Thuet's actions or inaction in the wake of the Detroit incident caused A.K. harm in January 2020. Doc. 226 at 3-4.

Thuet asserts that he did not depose A.K. in reliance on representations from Defendants' counsel concerning both the propriety of deposing students like A.K. and the relevance of any evidence that could be obtained. Doc. 204 at 1-2; Doc. 231 at 1-2. On May 7, 2021, Defendants' counsel emailed Thuet's counsel: "As you know, the Board's position remains that Plaintiffs were terminated because they mishandled several allegations of serious misconduct at LPHS, which harmed students. Whether the students or staff actually engaged in the alleged misconduct and *whether the students actually suffered harm is not at issue here*." Doc. 231-1 at 2 (emphasis added). The email continued: "Again, this is not a situation where the students are parties to the case or even eyewitnesses. What matters is what the adults did and said. Facing questioning from lawyers without any protections in place could be retraumatizing to these victims." *Ibid*. And on September 21, 2021, Defendants' counsel emailed Thuet's counsel: "[A]s you know, throughout the course of this litigation, we have stood firm in our responsibility to protect student identities and to prevent even the possibility of further harm onto [*sic*] victimized students, who are non-parties in this matter. … As such, *deposing the students is irrelevant, duplicative, and burdensome. My position remains that this case is about whether the Defendants violated your clients' constitutional rights, and the focus should be on the adults' actions or inactions*." Doc. 231-2 at 2 (emphasis added).

These communications show that Defendants urged Thuet not to depose students like A.K. and, significantly, that Defendants represented that whether students like A.K. suffered harm is not a relevant issue in this case. Thuet did not depose A.K., and the parties instead crafted a stipulation as to the events occurring on the Detroit trip. Thuet contends that Defendants cannot mark A.K.'s testimony out of bounds on the ground that it is irrelevant—and then, just before trial, put her testimony back in play. Doc. 204 at 1-2, 4.

Defendants respond that the need for A.K.'s testimony did not become apparent until the court issued its summary judgment opinion. Specifically, Defendants submit that the opinion made clear that Defendants would have to defend at trial the charge that they defamed Thuet with allegedly false statements that he had caused "life-altering harm" to and "endangered" students. Doc. 226 at 3. That argument is entirely unpersuasive. From its first paragraph, the complaint repeatedly alleges that Defendants falsely and publicly stated that Thuet harmed and endangered students. Doc. 1 at ¶¶ 1, 31, 33, 35, 38-39, 45, 51, 56. Whether Thuet in fact caused harm to or endangered students—and thus whether Defendants defamed him—was front and center from the very outset of this case; that issue did not suddenly become relevant upon the court's issuance of its summary judgment opinion.

At the final pretrial conference on November 22, 2022, Defendants suggested that Thuet had not truly heeded their desire to avoid deposing students because he served subpoenas on and deposed two other students, C.T. and C.P. One obvious explanation for Thuet's decision to depose C.T. and C.P. but not A.K. is the subject matter of their respective testimony. C.T., a member of the boys' basketball team, faced retaliation from teammates after revealing to school officials the sexual activity that had occurred on the Detroit trip. 2022 WL 6122622, at *1-2. C.P., a member of the girls' basketball team, received an inappropriate text message and other unwanted attention from her coach. 2022 WL 6122622, at *2. Thuet made the reasonable determination that A.K.—whose classmates saw a clandestinely filmed video of her engaged in a sexual act—had faced a far more traumatic experience than C.T. and C.P. and thus would have far more difficulty testifying about it. This is not to say that C.T. and C.P. did not themselves

suffer trauma. But there are degrees of trauma, and it was eminently reasonable for Thuet to discern a distinction between A.K., on the one hand, and C.T. and C.P., on the other, and to proceed accordingly.

Another obvious explanation for Thuet's decision to depose C.T. and C.P. but not A.K. is that the parties planned to and did reach a stipulation regarding A.K. Defendants argue that the stipulation concerns only the sexual misconduct itself, which occurred in December 2019, not Thuet's response to it, which occurred in January 2020. Doc. 226 at 4. The December-January line that Defendants seek to draw makes no sense, as A.K. presumably would be traumatized to testify about not only the Detroit trip but all the harm that followed in its wake. Moreover, in the parties' negotiations over the A.K. stipulation, Defendants did not even bother to propose that the stipulation cover harm that A.K. allegedly suffered in January 2020. Docs. 231-3, 231-4, 231-5. And, as noted, Defendants' counsel had represented to Thuet's counsel that harm to A.K. was not an issue of interest in the first place. Doc. 231-1 at 2.

Thuet's motion accordingly is granted. Defendants may not call A.K. as a witness at trial. The trial is less than two weeks from the hearing during which the court heard argument on this motion, and the Thanksgiving holiday sits between the same two dates. At this very late stage in the litigation, the court excludes A.K. as a witness, rendering her deposition unnecessary.

November 23, 2022                 _____
                                                                           United States District Judge